William A. GAMEL and Louise B. Gamel, Plaintiff-Respondents,

v.

Alvin C. LEWIS and Claudia E. Lewis, Defendant-Appellants.

No. 23800.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

---

Don C. Carter, Sturgeon, for appellants.

Falzone & Falzone, Moberly, for respondents.

SAMUEL A. DEW, Special Commissioner.

The respondents brought this suit to recover $20,000 damages claimed to have been sustained by them as purchasers of certain real estate and personal property, due to alleged fraud and deceit on the part of the appellants, the sellers. The parties will hereinafter be referred to as plaintiffs and defendants, respectively. Defendants filed an answer and a counterclaim for specific performance. There was a jury verdict in plaintiffs' favor on their petition in the sum of $6500, for which judgment was entered.

The court found in defendants' favor on their counterclaim, ordering defendants to deposit with the clerk of the court their general warranty deed conveying the real estate in question to the plaintiffs, subject to a deed of trust therein described, securing the balance of $18,546.34, with interest prorated, which plaintiffs were to assume; and further ordered plaintiffs to pay to the clerk for use of the defendants, $16,614.14 principal and $556.57 interest, to August 2, 1962, representing the purchase price of the property, less interest paid by plaintiffs on behalf of defendants, plus city and county taxes and liability insurance prorated to October 5, 1961. Thereupon the clerk was ordered to pay to defendants the sum so deposited, and upon plaintiffs' failure to so deposit the same, judgment to be entered in favor of defendants in the sum of $17,-170.71. From the foregoing judgment and decree the defendants have appealed.

Plaintiffs' petition pleads a contract entered into by them with defendants for

plaintiffs to purchase from defendants certain real estate and personal property thereon, located on Highway 63, in Moberly, Missouri, known and operated as Al's Restaurant, Motel and Trailer Court. The contract provided for a purchase price of $55,000 upon the closing of the transaction, assumption of the balance due on a deed of trust in the sum of $18,546.34, and a final amount to be paid defendants of $16,453.66, or a total of $55,000, subject to certain prorated items. It was alleged that plaintiffs had promptly executed the contract, paid defendants $20,000 and entered into possession, but had not yet paid the prorated taxes, nor the balance of the purchase price, nor had received a warranty deed from the defendants. The petition stated that plaintiffs were ready, willing and able to perform all of their obligations under the contract.

The petition alleged that at all times one Hugh Kelly acted as real estate agent for and in behalf of defendants; that the execution and performance of the contract were procured through the fraud and deceit on the part of defendants, their agents and servants, through willful, false and fraudulent representations and statements, to-wit: that the property known as Al's Restaurant, Motel and Trailer Court was properly licensed in conformity with the state, county and municipal laws, and concealed the fact that defendants had been ordered by the City of Moberly to pave all of the trailer court driveways and streets with asphaltic or concrete pavement, and concealed the fact that defendants had promised the city to meet those requirements; that defendants, their agents and employees, represented that the trailer court housed 22 trailer spaces of 40 x 75 feet each, and that they had complied with state, county and municipal regulations, whereas, defendants concealed the fact that 12 of the 22 trailer spaces were subject to an order made by the City of Moberly that required the back line to be moved 10 feet further from the north line of the property, thereby reducing the trailer spaces to 40 x 45 feet, rendering the present patios and plumbing connections useless, and making the 12 spaces too small for 55 foot trailers; that defendants concealed the fact from plaintiffs that they had promised the City of Moberly to increase the back line of the property from 20 to 30 feet, as ordered.

The petition stated further that defendants made certain representations to plaintiffs as to the quality of construction of the buildings on the property and that the property was yielding a net income of $2100 per month, $1500 from the restaurant alone, when 10 employees were used therein. It is averred that in truth and in fact each of the foregoing representations was false and fraudulent, made intentionally to induce plaintiffs to execute and perform said contract, namely that the streets of the trailer court will have to be paved by asphaltic or concrete material by July, 1963, in order to comply with municipal ordinances; and by that date the north line must be set back 10 feet; that certain repairs will have to be made to the buildings; that the property never paid the profits as represented by defendants.

The petition states that plaintiffs believed and relied upon such statements and representations by defendants, and that if plaintiffs had known the truth as above stated, they would not have entered into the contract; that plaintiffs did not know the truth of such facts and defendants knew that plaintiffs would not have entered into the contract if such facts were known to them.

It is further alleged that $5,000 will have to be expended for pavement of the streets of the trailer court, new water lines installed, extensive plumbing repairs made, two of the trailer spaces will be rendered useless, at least three trailer spaces will be lost by the setback; that the expected net profits will never be reached; that plaintiffs have been damaged in the premises in the sum of $20,000. The contract attached to the petition was substantially as described in the petition.

Defendants' answer admitted the contract of sale, the payment to them of $20,000 by the plaintiffs on the purchase price, admitted that possession had been given plaintiffs, and alleged that plaintiffs had failed to pay the balance of the agreed purchase price. All allegations of fraud or deceit were denied. Defendants also filed a counterclaim, as stated, asking that plaintiffs be requested to pay defendants the balance of the agreed purchase price, with interest, that the payment due be declared a lien on the real estate in favor of defendants until paid, and that all costs be assessed against plaintiffs.

Answering the counterclaim plaintiffs admitted their failure to close the transaction at the times and places named in notices from the defendants and prayed for an order requiring plaintiffs' petition first to be heard and determined, and that the court, upon consideration of the counterclaim, allow as a setoff from the balance of the purchase price due under the contract of sale, the amount of damages, if any, allowed the plaintiffs on their petition, the costs to be charged to the defendants.

According to the evidence adduced by the plaintiffs, they first became interested in defendants' property through an advertisement of it by a real estate agent in a St. Louis newspaper. Plaintiffs talked with the agent Kelly, who supplied them with a brochure, describing the property. Plaintiff, William Gamel, testified that he had lived in Columbia during the past four years, during part of which time he was employed by General Motors in the equipment division, and part of the period in the State Highway Department. Prior to that, he had been in the business of making and marketing cookies for sale in Missouri and Kansas. Near Columbia, he had divided a tract of land into three parcels. The tract had no name nor was it affected by any zoning regulations, but was outside the limits of Columbia. He said he had had no experience in the operation of a restaurant, motel or trailer court.

Mr. Gamel testified that he and his wife and his brother-in-law later drove to Moberly, called on Kelly, the agent, discussed the property, the price of same, and were given the brochure. The brochure set out the number and capacity of the buildings operated as a motel, restaurant and trailer court, along with the monthly income therefrom. Among other things, the brochure stated that there were 10 units of the motel, 22 spaces for trailers and seating capacity for 58 persons in the restaurant; that there was a net income of $2100 per month from the property; that the reason for selling was that "Owner is a contractor and is just tired of running the business". It also stated that the restaurant alone produced a net income of $1500 per month, with 10 persons employed therein. Plaintiffs were then shown through the buildings by the agent and defendant Alvin Lewis, and later made several tours of the property. Mr. Gamel testified that at no time was anything said to plaintiffs on those inspections of the property about any municipal requirement or agreement to replace the gravel paved streets around the trailer court by July, 1963, or to set back the north line of the trailer court ten feet by that date. Thereafter Mr. Kelly, the agent drew up a contract which was signed by the parties, and later a final contract was signed October 5, 1961.

The contract in evidence was generally in the usual form, as heretofore set out. It provided, among other things, that the seller would furnish an abstract of title no later than November 5, 1961, and second parties would have 30 days within which to examine the same, and if any defects appeared thereon defendants to have reasonable time to correct the same.

Testimony and official records of the Building Inspector's office in Moberly disclosed that on July 18, 1960, defendants herein had appealed to the Moberly Board of Zoning Adjustment from the orders of the Building Inspector, which orders required defendants to comply with the city ordinance which would compel a 30 foot setback from the property line and that, upon defendants' request, the Board grant-

ed them a variance as to such requirement until July, 1963; and that defendants at the same time had appealed from the ruling of the Building Inspector requiring them to replace the gravel pavement of the streets around the trailer court with asphaltic or concrete material, and upon defendants' request the Board had also granted defendants a "variance" as to their compliance with that part of the ordinance until July, 1963. In their second appeal, above noted, defendants had stated that the business "was temporary", but if it became profitable they would put in the streets as stipulated by the ordinance.

Plaintiff William Gamel testified that he knew nothing of the temporary "variance" permits; that the first he heard of such requirements was in January, 1962, when Bob Beecroft, one of the trailer tenants, a newscaster, told him of having learned about them at the City Hall, whereupon plaintiffs consulted their counsel about the matter. Mr. Gamel stated that compliance with the "variances" would cause the loss of several trailer spaces because of the necessary changes in angle parking and would cause changes in water and sewer lines serving the spaces.

A lady witness testified that while at a lumber yard as a customer she overheard Alvin Lewis say in a conversation with another man, that "he wished he could find out who was the blabber mouth that had been blowing his mouth to Mr. Gamel; that he wished he could be certain that it was Beecroft in regards to that property line. He could not park any large trailers there because the property line was such it couldn't be done". She said she was interested because her husband traveled for a paint company and they were trying to find trailer spaces for company trucks used by the painters.

A lady formerly employed by defendants as cook in the restaurant and who continued in that capacity after plaintiffs took possession, testified that on the day after this action was brought, Mr. Lewis called at her home, talked about the suit and remarked: "that if it hadn't been for Bob Beecroft it would have all been over with * * * and he would have had his money, * * * but Bob said something about it and that was the reason * * * and he told it. That is what Al told me". She said Mr. Lewis stayed and talked nearly an hour about the trailer matter and said: "That son-of-a-buck has sued me. I said 'No', and he said 'Yes'. I said 'how come?' He said 'If it hadn't been for Bob Beecroft it would have been all over. It was supposed to have been all settled up' ". She said she reported this conversation to plaintiffs the next day.

A general contractor testified that the area of the gravel streets around the trailer spaces amounted to about 3000 square yards and that it would cost approximately $2.50 per square yard, ($7500) to replace them for light traffic with asphaltic concrete paving material; that concrete would cost more.

A plumbing expert stated that it would cost about $37.50 each to remove and replace the water and sewer connections at the trailer spaces. Other outside plumbing to serve some of the motel units, he said, would cost, if removed and reinstalled, $90 each, not counting interior connections.

Bob Beecroft, a witness for the plaintiffs, stated that as a radio newscaster he accidentally learned in the Building Inspector's office that orders had been made requiring the streets around the trailer spaces in the property in question to be repaved, and the north setback line of the court to be increased to 30 feet to conform to the zoning ordinance of Moberly; that he later told Mr. Gamel what he had learned; that Mr. Gamel was shocked to hear of it.

A real estate operator testified that there would be a difference of $5,000 in the market value of the entire property subject to the pending zoning requirements and without any such limitations.

Defendant Alvin Lewis testified that he and his wife were the former owners of the

property involved; that they had owned and operated it about ten years; that they had listed it for sale with the Kelly Real Estate Company in 1961; that in August or September of that year Mr. Kelly brought plaintiffs to the property several times; that defendants, who were living in one of the motel units, showed plaintiffs the grounds, consisting of about six acres, the restaurant, the 10-unit motel and the 6-room residence and 22-space trailer court. He said about a week later Mr. Gamel and his brother-in-law came to see the property, asked about the income, expenses, etc. and expressed approval of the arrangement of the trailers. He said he told Mr. Gamel he had to arrange the trailer spaces as they were to comply with a 10-foot zoning requirement that trailers be parked 30 feet from the party line. He said he told Mr. Gamel at that time that he had gone to the Zoning Board and obtained a grant of to 10 feet, allowing him to park the trailers within 20 feet of the party line.

Defendant Alvin Lewis further testified that plaintiff inquired about the sewer and water pipes; that Mr. Gamel visited the plant five or six times, ate a meal at the restaurant and made no disparaging comments about the property. He said that on one of the occasions he told Mr. Gamel: "Another thing, I have got permission to park here for three years and I am to pave this street. If I am to park a trailer beyond three years I am to pave this street with asphalt or concrete pavement." He said Mr. Gamel made no comment as to this zoning requirement. He said he started with two motel units, increasing them over the years to ten. He later built the additional units and the restaurant. He denied knowing Bob Beecroft, except over the radio, and never heard of him in connection with this suit until the trial. He denied the conversation which plaintiffs' lady witness said she had heard in the lumber yard. He admitted going to the lady cook's home after this suit was brought to find out what was the cause of the suit, whether business was falling off or what else might have gone

wrong. He said he never mentioned Bob Beecroft on that visit nor on a similar call upon another former employee of his in the restaurant. He told of the failure of the plaintiffs to meet at the time and place designated by him for completion of the transaction. He testified to substantial net earnings from the property while in his possession and management.

On cross-examination defendant Alvin Lewis said that plaintiffs' counsel had called him prior to the date set for closing the deal and said some matters would have to be worked out before the deal could be closed and referred to "something about the zoning ordinance and paving the street," and at that time he asked witness if "I'd told Mr. Gamel anything about the trailer setback or anything like that. It took me by surprise. I said I wouldn't be sure at this time whether I did or not because it shocked me. I figured all the time settling up by the 10th, just as the contract called for, and it shocked me at the time. I got to thinking after I told Mr. Falzone that I did tell him". He was asked if he complied with the provision of the contract as to "having an abstract examined". He replied that he did.

Hugh Kelly, defendants' real estate agent, verified the previous statements as to plaintiffs' visits to the property and their expressions of satisfaction. He described the records of the profits made by defendants while in business and he estimated the value of the physical property at $60,768, not counting the value of the going business. He had estimated net income of $1500 per month. Later, defendant Alvin Lewis gave him a figure of $2100 per month; that on the basis of 15 percent net income, the value of the property was $98,000, and with the loss of 12 trailer spaces, that amount would be reduced by $1260, reducing the estimated value of the property to $89,000. He said he did not believe he knew of the zoning requirements when he was negotiating with the plaintiffs.

In rebuttal, Riley Hall, Mr. Gamel's brother-in-law, said that he recalled ac-

companying plaintiffs on several visits to the property; that at no time did he hear anything said about the pending zoning restrictions nor any "variances" granted defendants to July, 1963. He said Mr. Gamel had never indicated to him in any way that he knew of such requirements.

Mr. Gamel on rebuttal, stated that plaintiffs were willing to conclude the transaction as soon as the matter of their damages was determined by the jury in this case. He said he had never complained directly to defendant when he learned of the zoning ordinances but thought it was "high time" to consult his attorney.

■ Defendants' first point of error is that the court erred in refusing to sustain their motion for a directed verdict in their favor at the close of all the evidence. The first ground assigned therefor is that there was no substantial evidence on which a verdict for plaintiffs could be had. They point out that the sole theory of the case as submitted to the jury was that at the time of the contract the defendants knew that under the zoning laws of Moberly defendants were under an agreement made by them with the Zoning Board of Adjustment to pave the driveway with asphaltic concrete or concrete and to set back the trailers from 20 to 30 feet from the property line, all to be done by July, 1963, and that defendants had intentionally and fraudulently concealed such facts from the plaintiffs. Defendants insist, however, that the jury was confused by the bulk of the evidence in the case relative to plaintiffs' claims of faulty construction and defects, which were not submitted to the jury. As to such contention, we find no valid ground of objection to the abandonment by the plaintiffs of parts of their pleaded damages.

Defendants assert that the testimony of plaintiffs' real estate appraiser, Austin Pierce, was confusing, contradictory and ambiguous in his estimate of plaintiffs' damages relative to the market value of the property. While his testimony was complicated and in some instances not respon- sive, he did estimate a difference of $5000 in the market value of the property with and without the pending requirements of the zoning authorities affecting it. It is argued that at most such testimony substantiated damages of $5,000, not $6,500. There was, however, other evidence of the cost of compliance with the pending requirements of the zoning ordinance. For instance, the contractor testified that the paving costs alone would amount to $7,500. It was also shown that several trailer spaces would be lost by the setback line, and that substantial plumbing expense would be incurred by the changes.

■ Defendants also urge that the hypothetical question put to plaintiffs' real estate appraiser as to market value did not embody the proper elements of damage. Defendants interposed only two objections to the question when asked, (1) that the matter of time was omitted, and, (2) that the answer was not responsive. No specific objection was made as to the subject matter being improper in respect to the measure of damages nor was any offer made to supply the claimed deficiencies. The objection was therefore not properly preserved for review. Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, 411; Morton v. St. Louis-San Francisco Ry. Co., 323 Mo. 929, 20 S.W.2d 34, 45; Greenwood v. Bridgeways, Inc., et al., Mo.App., 243 S.W.2d 111, 113.

Defendants' second point of error is that the court erred in giving Instruction No. P-1 at plaintiffs' request. In substance that instruction directed the verdict for the plaintiffs if the jury should find and believe from the evidence that defendants undertook to induce plaintiffs to purchase the property described in the evidence and to execute a contract therefor; that defendants in 1960, had obtained a special permission from the City of Moberly to construct and operate a trailer park on the property with gravel driveways and a 20-foot setback line on its north boundary for only three years to July, 1963, and that defendants failed to disclose to plaintiffs the neces-

sity to pave the driveways and to conform to the 30-foot setback by July, 1963; that plaintiffs had no knowledge of such requirements and "such knowledge was not as readily available to plaintiffs as to the defendants"; that defendants knew that plaintiffs had no such knowledge and intentionally failed to disclose such facts with intention to induce them to buy said property at $55,000 and to contract therefor; that plaintiffs would not have made such purchase or executed such contract therefor if they had known of such pending zoning requirements and agreements, and were damaged by such concealment of such facts.

Defendants first contend that the above instruction is erroneous (1) because the limitations and agreements constituting the zoning requirements in evidence were matters of public record, equally available to the plaintiffs, and that defendants were under no duty in the law to disclose or inform plaintiffs of the same. Defendants offered no instruction other than their motion for a directed verdict at the close of the testimony.

Plaintiffs maintain that the property was advertised and shown as a going concern; that they were told that the capacity of the trailer court was 22 trailers of the usual dimensions; that the profit records were shown them disclosing the net income from the various parts of the enterprise; that plaintiffs were inexperienced in the operation and management of such property and business; that nothing was said to them respecting the pending limitations allowed and agreed to between the zoning authorities and defendants as shown in evidence; that defendants had superior knowledge of such facts and that no ordinarily prudent person would have searched for any such agreed "variances" as shown, before acting upon the representations of the defendants.

It may be noted here that although the contract provided for a complete abstract of title to the real estate to be furnished plaintiffs by March 5, 1961, as heretofore stated, no mention of same is otherwise found in the record except in the testimony of defendant Alvin Lewis: "Q. Now did you comply with this obligation on you as to having the abstract examined? A. Right." Although defendants assert that the actions of the Moberly Board of Zoning Adjustment were public records available to plaintiffs, no showing is made by either party as to whether such records were contained in any such abstract.

The general law as to the right to rely on representations is expressed as follows:

"The right to rely on representations is generally conceded where the hearer lacks equal facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain, as where misrepresentations relate to latent defects, where, because of the hearer's ignorance and inexperience, it would be necessary for him to employ a third person to make an examination in order to learn the truth * * *". 37 C.J.S. Fraud § 34, pp. 279, 280.

Even misrepresentations of law may be actionable if made by a party not in a position of trust, if such person has a superior knowledge of the law and the other party, relying thereon, is induced to execute an obligation to his injury. Security Sav. Bank v. Kellems, 321 Mo. 1, 9 S.W.2d 967, 970; Emily v. Bayne (St. Louis Court of Appeals), 371 S.W.2d 663.

Assuming that the facts concealed from the plaintiffs herein were matters of public record, it was said in 23 Am.Jur., Fraud and Deceit, Section 163, p. 972: "It is generally held that fraud may be predicated of false representations or concealments, although the truth could have been ascertained by an examination of public records". The facts which plaintiffs claim were concealed from them were latent matters; the long ownership and operation of the property by defendants supplied them with superior knowledge of the zoning requirements and the

present status of the property thereunder. It must be considered that the jury determined that defendants did not in any way inform the plaintiffs of the zoning restrictions and "variances" of which defendants had actual and superior knowledge.

The Supreme Court in Bertram et al. v. Kempster et ux., Mo., 216 S.W.2d 494, 496, quoted with approval the following:

" * * * 'the law of fraud does not exact of the victim that degree of caution which some other hypothetically prudent person would have used, but only reasonable care in view of *his* situation. * * * The snares of the fraud-feasor are most often set for the incompetent, the ignorant, and the unwary' ".

See also Wolf v. Kansas City Tire & Service Co. et al., Mo.App., 257 S.W.2d 408.

"Where the fact misrepresented or the matters which are concealed are peculiarly within the representor's knowledge and the representee is ignorant thereof, it is generally held that, although the real fact appears on the public records, the representee is under no obligation to examine the records, and his failure to do so does not defeat his right of action. This is especially true where the very representations relied on induced the hearer to refrain from an examination of the records, where the employment of an expert would have been required to deduce the truth from an examination of the records, * * * or where the defrauded party was inexperienced". 37 C.J.S. Fraud § 34, p. 281.

■ We think that under the great weight of authority it was the duty of the defendants in this case to reveal to the plaintiffs the material limitations of the zoning ordinance affecting the operation of the property being sold to the plaintiffs, as to which defendants had procured temporary deferments and that the failure of the plaintiffs to search for any public records dis-

closing the same did not affect their right to recover their damages herein.

■ Defendants next claim error in the giving of Instruction No. P–1 in that it contains the following: " * * * and if you further find that the plaintiffs had no knowledge of the necessity of paving the driveways and the conformity to the 30 foot setback line by July, 1963, *and such knowledge was not as readily available to the plaintiffs as it was to the defendants, * * ***". (Italics supplied.) Claim is made that the italicized words constituted a comment by the court, was contradictory of Mr. Gamel's testimony that he was familiar with zoning laws and knew that Moberly had zoning regulations, but that he did not examine them because he thought "everything was in order". The instruction, a verdict-finding one, submitted a series of factual elements, each preceded by the words "if you find and believe from the evidence", or "if you further find", etc., and the part complained of was plainly so expressed when the punctuation and phraseology are given effect. The point is overruled.

The instruction did not conflict with Mr. Gamel's testimony. He testified that his property in Columbia was outside that city and zoning laws were not involved when he divided it into three parcels. He said he was "generally" familiar with zoning laws and assumed there were such laws in Moberly; that he did not examine them as to defendants' property because it was an operating business and he felt that "everything was all right".

■ Defendants' last point is that Instruction No. P-2 on the measure of damages is erroneous, as not stating the true measure of damages. Admittedly this point was not included in the motion for new trial. It is therefore not preserved for review, Supreme Court Rules 70.02 and 79.03, V.A. M.R.; Arnold v. Fisher, Mo.App., 359 S.W. 2d 602. Defendants ask this court, nevertheless, to entertain the point as a plain error. They did not offer any instruction

at the trial other than their motion for a verdict. Under all the circumstances we believe this court is not justified in reviewing the point here made without the attention of the trial court being first directed to the same for consideration.

The judgment of the trial court should be affirmed. The Special Commissioner so recommends.

The foregoing opinion of SAMUEL A. DEW, Special Commissioner, is adopted as the opinion of the Court.

All concur.