Thomas J. OSTERBERGER and Janet Osterberger, Plaintiffs-Respondents,

v.

HITES CONSTRUCTION COMPANY, Eugene F. Hites and Patricia S. Hites, Defendants-Appellants.

No. 39998.

Missouri Court of Appeals, Eastern District, Division Four.

April 29, 1980.

Eugene E. Eimer, St. Louis, for defendants-appellants.

Pannell, Dodson & Robinson by Kurt D. Breeze, Festus, for plaintiffs-respondents.

SATZ, Judge.

This is an equitable action for rescission on direct appeal.

Plaintiffs, Thomas and Janet Osterberger, sued defendants, Hites Construction Company, and Eugene F. Hites and Patricia Hites, individually, alleging that defendants fraudulently concealed from plaintiffs the existence of an outstanding deed of trust on a house which was sold and conveyed to plaintiffs by defendants. In their prayer for relief, plaintiffs requested rescission of the instruments comprising the sale and conveyance and, also, sought actual and punitive damages. Defendants counterclaimed, basically seeking the balance and interest due on the promissory note executed by plaintiffs for payment of the house. Judgment was entered for plaintiffs on their claim for rescission and against defendants on their counterclaim. The trial court rescinded the sales contract for the house, plaintiffs' promissory note, the general warranty deed conveying the property, the deed of trust securing the promissory note and also rescinded and cancelled a trustee's deed by which the trustee conveyed the property back to defendant Hites Construction Company, after the company purchased the property at a foreclosure sale. In addition, the court entered a money judgment against defendants in the amount of $4,998.48, which represented $998.48 for recovery of plaintiffs' monthly payments under the promissory note, $3,000.00 for the down payment made by plaintiffs and $1,000.00 for attorney's fees.[1]

This was a court tried case and, thus, we sustain the judgment of the court unless the judgment is against the weight of the evidence, or unless the court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In addition, where, as here, no findings of fact or conclusions of law were requested or given, all issues are to be deemed found in accordance with results reached, and the judgment is to be affirmed under any reasonable theory presented by the evidence. *E. g., S. G. Adams Printing v. Central Hardware Co.*, 572 S.W.2d 625, 627–628 (Mo.App.1978). Further, we accept as true all evidence and permissible inferences favorable to the plaintiffs, as prevailing parties, and we disregard any contradictory evidence. *Id.* at 628.

Viewing the evidence in the light of these principles, the record discloses that the en-

---

1. Plaintiffs' cause of action was couched in the language of fraud. Their prayer for relief requested rescission as well as actual and punitive damages. Arguably, the two kinds of relief which were sought, rescission and damages, are inconsistent remedies. To receive actual and punitive damages, plaintiffs were, in effect, affirming the contract and suing at law for damages and, at the same time, plaintiffs were disaffirming the contract and suing in equity for rescission. However, we do not reach the question of election of remedies because this issue was not raised by defendants. Compare, *State ex rel. Hilleary and Partners, Ltd. v. Kelly*, 448 S.W.2d 926, 930 (Mo.App. 1969). Furthermore, as noted, aside from the award of attorney's fees, the court's judgment only granted plaintiffs' prayer for rescission and rescission's logical companion, restitution.

tire transfer in question occurred on a Sunday, in March of 1975, when plaintiffs purchased a house from defendant, Hites Construction Company. Defendant Patricia Hites, the secretary-treasurer of Hites Construction Company, negotiated the sale with plaintiffs. She prepared all the instruments involved in this transaction prior to plaintiffs' arrival to complete the sale. The sales contract, promissory note, deed of trust and general warranty deed were all executed on the date of sale. The purchase price of the home was $32,750.00. As a down payment, Patricia Hites agreed to accept a boat owned by plaintiffs, valued by the parties at $3,000.00. Plaintiffs executed a promissory note to Hites Construction Company for the balance of $29,750.00 and secured this note by a deed of trust to Eugene J. Hites, the son of the individual defendants, as trustee for Hites Construction Company. Defendant Hites Construction Company conveyed the house to plaintiffs by a general warranty deed, which defendant Eugene F. Hites, as president of the company, signed at a later time on the date of the sale and not in plaintiffs' presence.

The instruments used to transfer the house, for example, the sales contract and general warranty deed, were standard forms and had specifically designated spaces which were to be used to reflect any encumbrances on the property being transferred. None of these instruments executed indicated that the property being transferred was subject to any prior encumbrance. However, at the time of the purchase, the property in question was subject to a recorded deed of trust in favor of Ozark Federal Savings & Loan (Ozark), which secured a construction loan of $21,-000.00, made by Ozark to Hites Construction Company. Although Patricia Hites was aware of this outstanding deed of trust, she failed to disclose its existence during her negotiations with plaintiffs and she failed to insert a description of this encumbrance in the instruments prepared by her. Also, defendant Eugene F. Hites admitted that Hites Construction Company had transferred other property to other buyers by warranty deeds which likewise did not indicate outstanding deeds of trust.

Plaintiff Thomas Osterberger was transferred to another job in June of 1975 and moved his family to Michigan the following month. Payments on the promissory note were made from March until about August of 1975. Prior to their move, plaintiffs listed their house with a real estate agent who discovered the existence of the prior deed of trust on the property, and, although the agent had located a buyer who appeared to be willing to purchase the property and assume a single deed of trust, the purchase could not be completed because of the two outstanding deeds of trust.

Plaintiffs defaulted on their payments sometime in July or August of 1975, and instituted the present suit in January, 1976. Subsequently, in May, 1976, defendant Hites Construction Company foreclosed on the property. The company was the highest bidder at the foreclosure sale and purchased the property for $25,000.00. The property was then conveyed to the company by a trustee's deed prepared by defendants' attorney, which, unlike the warranty deed conveying the property to plaintiffs, specifically described the outstanding deed of trust to Ozark as an encumbrance on the property. As noted, the trial court rescinded the instruments reflecting the transfer of the property and entered a judgment in favor of plaintiffs against defendants in the amount of $4,998.48. Defendants filed their direct appeal.

Although the body of plaintiffs' petition is loosely couched in the general language of fraud, the specific relief prayed for, granted and in question here is rescission and not damages resulting from a tortious fraud. Defendants generally complain there was not sufficient evidence to support a fraud and, further, complain the trial court misapplied the relevant law. To understand defendants' specific arguments in support of their general complaints, we set out the pertinent principles of the relevant law, some of which defendants fail to mention and discuss.

The tort of fraud and deceit consists of "a representation; its falsity; its materiality; the speaker's knowledge of the falsity or his ignorance of its truth; the speaker's intent that his statement should be acted upon by the person and in the manner reasonably contemplated; the hearer's ignorance of the falsity of the statement; his reliance on its truth; his right to rely thereon; and his consequent and proximately caused injury". *Ackmann v. Kenney-Toelle Real Estate Company*, 401 S.W.2d 483, 488 (Mo. banc 1966). To recover in fraud and deceit it is not always essential that a false and fraudulent misrepresentation be made. Concealment of a fact which one has a duty to disclose properly serves as a substitute element for a false and fraudulent misrepresentation. *Denny v. Guyton*, 327 Mo. 1030, 40 S.W.2d 562, 590 (banc 1931). Upon discovering a fraud which induced a contract, a party may seek to affirm the contract and sue at law for damages, or, he may disaffirm the contract and sue in equity for its rescission. *Id.* 40 S.W.2d at 591. Obviously, then, rescission may be based upon actual fraud; i. e., a false representation of a material fact, made with the knowledge of its falsity and with the intent to deceive. However, rescission may also be based upon a false representation or a concealment, which, although described or labeled as fraudulent, is in reality a misrepresentation or concealment made innocently as a result of a misapprehension or mistake. *Ellenburg v. Edward K. Love Realty Co.*, 332 Mo. 766, 59 S.W.2d 625, 629 (1933); *see also Hudspeth v. Zorn*, 292 S.W.2d 271, 276 (Mo.1956). As the court stated in the *Love* case: 59 S.W.2d l.c. 627.

"Appellant's contention overlooks the distinction between a case of actual fraud and one of constructive fraud. In actions at law to recover damages for fraud and deceit, it must be shown that false representations were made, with knowledge of their falsity and with fraudulent intent, but where, as in the case at bar, an action in equity is brought to rescind a contract on the ground that it was induced by fraudulent representations, it is not necessary to show that the party making the fraudulent representations knew of their falsity, or made them with an intent to cheat and defraud."

To support their general complaints, defendants specifically contend the transaction in question was an arms-length transaction and, thus, they had no duty to disclose to plaintiffs the existence of Ozark's deed of trust. We disagree. Admittedly, business is still business, and normally, where parties are dealing at arm's length, neither can legally complain about the mere silence of the other. *See Ewing v. Miller*, 335 S.W.2d 154, 156–157 (Mo.1960); *compare, Shepherd v. Woodson*, 328 S.W.2d 1, 7 (Mo.1959). However, in factual situations similar to the present case, our courts have carved out a number of important exceptions to the rule of nonliability for failure to disclose material facts. No single factor is necessarily determinative. However, we have imposed a duty to disclose on defendants who concealed facts which induced plaintiffs to refrain from an examination of the public records. *See Scott v. Hill*, 330 Mo. 490, 50 S.W.2d 110, 111 (1932). Moreover, if a plaintiff is so inexperienced that he would not be able to ascertain the true state of the title to property without employing a third person to examine the records, we have imposed a duty on the defendant to disclose all encumbrances on that title. *Nixon v. Franklin*, 289 S.W.2d 82, 89 (Mo.1956); *Gamel v. Lewis*, 373 S.W.2d 184, 191 (Mo.App.1963). Furthermore, we have found that partial information may be as misleading and deceptive as active misrepresentation, and we have imposed a duty to disclose material facts where the defendant has invited plaintiff's confidence by making only a partial disclosure. *Shechter v. Brewer*, 344 S.W.2d 784, 788–789 (Mo.App.1961).

On the present record, defendants had a duty to disclose to plaintiffs the existence of Ozark's outstanding deed of trust. There was a great disparity between the parties with regard to their knowledge of real estate matters. Neither plaintiff had training or extensive experience in real es-

tate transactions. This was the first house purchased by plaintiff Thomas Osterberger, and plaintiff Janet Osterberger had purchased a house only on one previous occasion with a former husband. In contrast, both defendant Patricia Hites, as secretary-treasurer of defendant Hites Construction Company, and defendant Eugene F. Hites, as president of the company, had extensive experience not only in building but also in selling homes. Using her superior knowledge, Patricia Hites prepared all the instruments involved in the transfer, and she was well aware that plaintiffs' lack of training and experience caused them to look to her for information, advice and guidance. Moreover, she willingly took it upon herself to explain the contents of the instruments to plaintiffs. However, she made only a partial disclosure. In her explanation, she omitted any reference to the outstanding deed of trust and she failed to insert the description of this encumbrance in any of the instruments in question. Plaintiffs' inexperience coupled with Patricia Hites' partial disclosure was a rational basis for the trial court to conclude that plaintiffs were induced to complete the entire transaction on a Sunday without waiting to hire a third person to examine the records so as to ascertain the true status of the title to the property being transferred. Under these circumstances, the court properly found these defendants concealed a fact they had a duty to disclose.

Defendants next contend that the existence of Ozark's outstanding deed of trust was not a material fact. Apparently, defendants argue that plaintiffs did not understand real estate transactions and, therefore, even if plaintiffs had been informed of the outstanding deed of trust, they still would not have changed their position and altered their contract to buy. This argument is peculiar, to say the least. The law protects the uninformed and credulous with the same strength and vigilance that it protects the informed and skeptical.

The test of materiality is objective not subjective, and, where the fact concealed is an encumbrance on property, as in the present case, the test is not, subjectively, whether the fact concealed would have affected the conduct of the particular buyer concerned but, rather, whether, objectively, the fact concealed would have affected the conduct of a reasonably prudent buyer. *Scott v. Hill, supra*, 50 S.W.2d at 111. Thus, defendants cannot defend themselves on the grounds that these plaintiffs were uninformed, should not have trusted defendants and were cheated because of their own credulity. There was ample evidence that a reasonably prudent buyer would have altered his conduct in this real estate transaction if he had known the property was already encumbered by a deed of trust. *E. g., Ellenburg v. Edward K. Love, supra*, 59 S.W.2d at 629.

Defendants also argue there was no concealment because Ozark's deed of trust had been recorded prior to the transaction in question and, thus, under § 442.390 RSMo 1978,[2] plaintiffs had constructive notice of the existence of this deed. Defendants' reliance on this statute and on related cases is misplaced. The notice provided by § 442.390 RSMo 1978 does protect Ozark's interest in its deed of trust, but plaintiffs did not attack the propriety or the validity of that deed of trust. On the contrary, they acknowledged its valid existence as a fact essential to their case. Plaintiffs attacked defendants' failure to disclose this fact, and fraud may be predicated on a concealed fact even though that fact could have been ascertained by an examination of the public records. *Gamel v. Lewis, supra* at 191. *See also Miller v. Higgins*, 452 S.W.2d 121, 124 (Mo.1970). Arguably, the recording of the deed of trust would be pertinent and may have been considered by the trial court to determine whether the means of determining the concealed fact was readily available and as-

---

2. Section 442.390 provides: "Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice."

certainable so that plaintiffs should not have relied on defendants' partial disclosure. However, defendants' duty to disclose was not discharged by plaintiffs being charged with constructive notice of the recording.

 Defendants also contend that they did not intend to defraud plaintiffs but merely omitted a matter they believed to be unimportant. However, defendants do not contend their omission was inadvertent and, as we have previously noted, an intentional omission, innocently made, without intent to defraud, may be labeled "constructive fraud" and will support the remedy of rescission. *Ellenburg v. Edward K. Love, supra* at 629; *Hudspeth v. Zorn, supra.* Furthermore, we have reviewed the evidence under the precepts of *Murphy v. Carron, supra,* and without again detailing the facts, we find the trial court could have sensibly concluded defendants did intend to defraud plaintiffs.

 Defendants next contend that an equitable judgment should not have been entered in favor of plaintiffs, because plaintiffs came to court with "unclean hands". More specifically, defendants contend that plaintiffs learned of the encumbrance on the property but still listed the property for sale without disclosing this fact. There is no factual basis for this assertion. Viewing the evidence, as we must, in the light most favorable to plaintiffs, plaintiffs consistently testified they first learned of the encumbrance from their agent after they listed the property with him. Furthermore, the hoary and murky doctrine that "one who seeks equity must come in with clean hands" applies only to a party who shows he was injured by the asserted inequitable conduct. *Price v. Ridler,* 373 S.W.2d 59, 62 (Mo.1963); *Hunt v. Easley,* 495 S.W.2d 703, 707 (Mo.App.1973). Defendants, here, did not and could not show they would have been injured had plaintiffs, in fact, listed their property without disclosing the encumbrance allegedly known by them. Therefore, the doctrine of "unclean hands" would be inapplicable here.

 Defendants next argue that defendant Eugene F. Hites should not have been held personally liable because he merely executed the warranty deed in question in his corporate capacity, as president of defendant Hites Construction Company. We disagree. To hold an officer of a corporation liable, he must be shown to have had actual or constructive knowledge of the actionable wrong and participated therein. *Wolfersberger v. Miller,* 327 Mo. 1150, 39 S.W.2d 758, 763–764 (1931); *accord, McKeehan v. Wittels,* 508 S.W.2d 277, 283 (Mo. App.1974); *City of St. Louis v. Boos,* 503 S.W.2d 133, 135 (Mo.App.1973). Eugene F. Hites testified that he had actual knowledge of the encumbrance in question at the time he executed the warranty deed, and, as noted, the warranty deed failed to show that such an encumbrance existed. In addition, defendant Hites testified that he and his corporation had transferred other property in the same manner, by warranty deeds which also failed to reflect existing deeds of trust. Fraud can be shown by circumstantial evidence, *e. g., Watson v. Harris,* 435 S.W.2d 667, 673 (Mo.1968), including evidence of other similar transactions in the course of a systematic way of doing business. *Blakeley v. Bradley,* 281 S.W.2d 835, 839 (Mo.1955). On the present record, we cannot say there was insufficient evidence for the trial court to find defendant Hites had knowledge and participated in the fraudulent concealment of the encumbrance in question; nor can we say the judgment against defendant Hites in his individual capacity was clearly erroneous and, thus, even if our judgment would be different, we could not substitute our judgment for the trial court's judgment. *Murphy v. Carron, supra* ; *Johnson v. Roberts,* 532 S.W.2d 530, 532 (Mo.App.1976).

 As previously noted, defendants, in their counterclaim, sought judgment for the principal and interest allegedly due on plaintiffs' promissory note. Having found the trial court was correct in rescinding the instruments in question, it necessarily follows, and we find, that the trial court was correct in entering its judgment against defendants on their counterclaim. As sepa-

rate and distinct compensation, defendants now assert that the trial court should have compensated them for plaintiffs' use of the property so as "to do equity between the parties". Defendants did not seek this relief in their counterclaim. Arguably, this omission would not be fatal because in an equitable action, the court has the inherent power to adjust equity between the parties. *Watson v. Harris, supra* at 676; *Reliable Life Ins. Co. v. Bell*, 246 S.W.2d 371, 376 (Mo.App.1952). Moreover, in invoking the equitable jurisdiction of the court to rescind and cancel the instruments in question, plaintiffs indicated their willingness to make whatever restitution the case required. *West v. Witschner*, 482 S.W.2d 733, 737 (Mo.1972); *Sebree v. Rosen*, 374 S.W.2d 132, 138 (Mo.1964). Nonetheless, our courts are unwilling to grant relief to defendants who have engaged in a wilful deception. *Plummer v. Lasson*, 177 S.W.2d 455, 460 (Mo.1944); *see also Kadlowski v. Schwan*, 329 Mo. 446, 44 S.W.2d 639, 644 (Mo.1931). On the present record, there was sufficient evidence to find that the defendants intentionally concealed a material fact from plaintiffs, and, under these circumstances, denial of compensation by the trial court was correct.

Defendants also claim it was error for the trial court to award reasonable attorney's fees to plaintiffs. We agree.

▮▮▮ The general rule governing the allowance of attorney's fees permits recovery of these fees " 'only when called for by contract or provided by statute, or as an item of damage when their incurrence involves the wronged party in collateral litigation, or occasionally, when a court of equity finds it necessary to adjudge them in order to balance benefits' " *Arnold v. Edelman*, 392 S.W.2d 231, 239 (Mo.1965); *Rook v. John F. Oliver Trucking Co.*, 505 S.W.2d 157, 161 (Mo.App.1973). However, the equitable balancing of benefits by awarding attorney's fees occurs only if "very unusual circumstances" can be shown, *In re Kerr*, 547 S.W.2d 837, 841 (Mo.App.1977), and plaintiffs have not demonstrated that the present action was so different than other

actions setting aside legal instruments that the present action should be considered an unusual circumstance. *See Bolin v. Anders*, 559 S.W.2d 235, 247–248 (Mo.App.1977); *In re Kerr, supra*. Therefore, we find the trial court erred in awarding attorney's fees to plaintiffs.

▮▮▮ Finally, defendants simply point out that the trial court rescinded and cancelled plaintiffs' promissory note, even though plaintiffs did not explicitly make this request in their prayer for relief. Defendants failed to raise this issue in their "Points Relied On", and they failed to develop any argument to demonstrate the trial court was powerless to grant this relief or that this action of the trial court prejudiced them. Thus, defendants failed to comply with Rule 84.04(d) and this assertion of error is not properly before us. *E. g.*, *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978); *Boten v. Brecklein*, 452 S.W.2d 86, 96 (Mo.1970). Furthermore, we are not obliged to consider this issue under the doctrine of plain error, because, on the present record, the trial court's rescission of plaintiffs' promissory note does not cause manifest injustice or a miscarriage of justice. Rule 84.13(c).

▮▮▮ Both before and after our present method of code pleading, we frequently disregarded the prayer of petition in determining what relief, if any, was authorized by the allegations in the petition, and a prayer for relief, precisely defined, is no part of the petition. *LaPresto v. LaPresto*, 285 S.W.2d 568, 571 (Mo.1955); *Salmons v. Dun & Bradstreet*, 349 Mo. 498, 162 S.W.2d 245, 252 (1942); *Caldwell v. Eubanks*, 326 Mo. 185, 30 S.W.2d 976, 980 (1930); *State v. Carroll*, 343 S.W.2d 622, 629 (Mo.App.1961). Furthermore, even though the request for rescission of the promissory note in the present case arises only by implication, "a court of equity will not allow a formal mispleading to prejudice the substance of a claim, especially in cases of fraud. *Pomeroy, Equity Jurisprudence* § 910 (5th ed. 1941). In equity practice, no less than at law, the jurisdiction to enter a judgment rests on a pleading which states

the theory of the case sufficiently to inform the adversary and the court the questions presented for decision. *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d 86, 95 [8, 9] (Banc 1944). But the rules of pleading do not apply with the same stringency to causes in equity when to do so impairs the inherent function of equity to give relief. That is only to say that equity looks to the substance of a claim not the form. *Melvin v. Hoffman*, 290 Mo. 464, 235 S.W. 107, 114 [2–4] (Banc 1921); 30A C.J.S. Equity § 179.- ” *Dewey v. Jenkins*, 567 S.W.2d 382, 386 (Mo.App.1978). Equity may shape the remedy to meet the demands of justice without rigid adherence to any determined form, so long as the demands of justice are not, under the given circumstances, incompatible with fairness to the adversary. *Pomeroy, Equity Jurisprudence* § 910 (5th ed. 1941); *McClintock on Equity* § 14 (2d ed. 1948). See Rule 55.33(b).

From the extensive pre-trial pleadings and discovery in the case as well as the record of the trial, it is obvious that rescission of plaintiffs' promissory note was part of the essential relief plaintiffs were seeking. Without rescission of the note, the rescission of the other instruments would be meaningless to plaintiffs. As long as the note subsists, plaintiffs would remain indebted to defendants. Thus, although plaintiffs' prayer for relief did not expressly request rescission of their promissory note, that imputation is clear from the other equitable relief they sought. In addition, the evidence supporting rescission of the other instruments involved in the present transaction necessarily supports rescission of the promissory note. Furthermore, if the propriety of the promissory note were not implicitly put in issue by plaintiffs' pleadings, defendants, themselves, explicitly raised this issue by their counterclaim. The issue was litigated, found in favor of plaintiffs and judgment was rendered against defendants on their counterclaim. We have affirmed that judgment, which means the promissory note can no longer be the valid basis for the existence of a debt owed by plaintiffs to defendants. Rescission of the note could not affect this no longer extant

legal relation between defendants and plaintiffs and, thus, rescission of the note works no injustice against defendants.

Accordingly, we reverse the trial court's award of attorney's fees to plaintiffs and we affirm the court's judgment in all other respects.

DOWD, P. J., and CRIST, J., concur.