HATTIE ELLENBURG v. EDWARD K. LOVE REALTY COMPANY, a Corporation, Appellant.—59 S. W. (2d) 625.

Division One, April 20, 1933.

*Gustave A. Stamm and Maurice L. Stewart* for appellant.

*Taylor, Mayer & Shifrin, Jones, Hocker, Sullivan & Gladney, Lon O. Hocker* and *Ralph T. Finley* for respondent.

770

FRANK, P. J.—Action in equity by Hattie Ellenburg, plaintiff below, seeking rescission of the purchase and sale of a principal note in the sum of $17,000, and six semi-annual interest notes of $510 each, all secured by a deed of trust on real estate located in St. Louis County, Missouri. The decree below went in favor of plaintiff and defendant appealed.

The petition was not challenged. It alleges, in substance, that defendant represented to plaintiff and her agent that the deed of trust securing said notes was a first deed of trust on said real estate; that said representations were false in that there were two prior deeds of trust on said property, the amounts of which exceeded the value of the property; that relying on the truth of said representations and being deceived thereby, plaintiff purchased said notes and deed of trust paying therefor the sum of $17,416.50, being the principal of said note together with accrued interest; that when plaintiff learned that said representations were false she immediately tendered said notes and deed of trust to defendant and demanded the return of the $17,416.50 which she had paid defendant therefor; that plaintiff again offers and tenders same to defendant; that defendant failed and refused and still fails and refuses to pay said purchase price or any part thereof to plaintiff.

The prayer of the petition is that the court decree rescission of the contract of purchase and sale of said notes and the return of the purchase price thereof to plaintiff, and that plaintiff have judgment for $17,416.50 with interest, and such other and further relief as to the court might seem meet and proper.

Appellant contends that plaintiff having elected to pursue the equitable remedy for rescission of the contract of purchase, and having pleaded false representations as the only grounds of equitable jurisdiction, it was incumbent upon her, in order to make a case, to prove that defendant made a false representation regarding a material fact; that such representation was not believed by defendant on reasonable grounds to be true; that it was made with intent that it should be acted upon; that it was acted upon by plaintiff to her damage; that plaintiff was ignorant of its falsity and reasonably believed it to be true; and that such representation induced the making of the contract.

Appellant's contention overlooks the distinction between a case of actual fraud and one of constructive fraud. In actions at law to recover damages for fraud and deceit, it must be shown that false representations were made, with knowledge of their falsity and with a fraudulent intent, but where, as in the case at bar, an action in equity is brought to rescind a contract on the ground that it was induced by fraudulent representations, it is not necessary to show that the party making the fraudulent representations knew of their falsity, or made them with an intent to cheat and defraud. The distinction between the two classes of cases is clearly pointed out in 12 Ruling Case Law, page 345, section 100. It is there said:

"False representations which are made with knowledge of their falsity, and with a fraudulent intent, are, of course, ground for relief in equity as well as at law. As a general rule, however, courts of equity will grant relief in such cases, by way of rescission or otherwise, even though no fraudulent intent on the part of the person making the representation is shown, and though he made them innocently, as a result of misapprehension or mistake. All that need be shown under such circumstances is that the representations were false and actually misled the person to whom they were made. The reason generally given for the rule is that courts of equity may grant relief on the ground of constructive fraud such as would not authorize relief by way of an action of deceit at law."

Such is the rule in this State. In Glasscock v. Minor, 11 Mo. 655, 657, we said:

"As the case stands, there is no pretense of actual fraud. The question, however, still arises, whether Minor's mistake has not equally misled the complainant and if so, whether he will not be compelled in a court of equity to make good his representations.

"There are numerous cases in the books in regard to misrepresentations concerning the quality of the land sold, and it seems to be a very prevalent opinion in cases of this character, that even an innocent mistake, by a party selling, where it operates as a surprise and imposition on the other party, in a matter forming a material induce-

ment to the purchase, will be regarded as a fraud in law, and will authorize a court of equity to set aside the contract.''

In Cook v. Smith, 184 Mo. App. 561, 170 S. W. 672, the plaintiff brought suit to rescind a contract of sale of land, on the ground, among others, of false representation. Contention was there made that ·defendant's liability to give up the purchase money rested on his guilty knowledge that the representations he made were false. Of this contention, that court said:

''This would probably be true in an action for damages based on fraud and deceit, but where the vendee merely seeks to rescind the sale and recover back or prevent his having to pay the purchase price, it is enough that the representations be false, however innocently made or ignorant of the facts the party making such representations may be, where the other party has been induced thereby to make the purchase and part with his money.'' [Citing authorities.]

In support of the contention that it was incumbent upon plaintiff to show that the alleged false representations were made with knowledge of their falsity and with a fraudulent intent, appellant cites Morgan County Coal Company v. Halderman, 254 Mo. 596, 163 S. W. 828; Southern Development Co. v. Silva, 125 U. S. 247, 31 L. Ed. 678; Livermore v. Middlesborough Town Lands Co., 106 Ky. 163, 50 S. W. 6, 13; Towels v. Campbell, 204 Ky. 591, 264 S. W. 1107, 50 A. L. R. 175.

The Morgan County Coal Company case was decided by this court en banc. The language of the opinion upon which appellant relies reads as follows:

''If this were all that is involved in the case it might well suffice to say that the actual knowledge of the falsity of the misleading statements is not, by the great weight of authority, an absolutely necessary element in equity in order to justify rescission of a contract for fraud, where the actionable statements are made recklessly, or made under such circumstances as that, from these circumstances knowledge will be inferred either from the duty to know, or from the opportunity afforded for acquiring knowledge; present other requisite elements.''

This statement from the opinion, standing alone, would, impliedly at least, support appellant's contention, but other parts of the opinion must be looked to in order to determine what the court, in fact, decided. The court also said:

''We need not, however, discuss intent or *scienter*, either actual or that implied from reckless statement, or that inferable from the duty to know, or from the circumstances imputing knowledge, unless we find (a) that plaintiffs acted on the misrepresentations of St. Johns and Noyes, being ignorant of the falsity thereof, and reasonably believing such misrepresentations to be true, and (b) that the rescission was made in a timely way without such delay as implied laches.''

The opinion then concludes by deciding the case in favor of de-

fendant on two grounds, (1) that plaintiff did not act on the alleged false representations, and (2) that the rescission was not timely made and for that reason plaintiff was guilty of laches.

From a consideration of the entire opinion it is at once apparent that the part of the opinion upon which appellant relies is not a part of the court's decision, and is therefore *obiter dictum* and not a precedent.

The three other cases to which attention is called support appellant's contention, but they are not in accord with the decisions in this State on the question. We adhere to the Missouri rule.

It is contended that plaintiff is not entitled to maintain this action in equity because she had an adequate remedy at law.

The circumstances under which the rule contended for should be applied are clearly pointed out by VALLIANT, J., in Lime & Cement Company v. Citizens' Bank, 158 Mo. 272, 279, 280, 59 S. W. 109, as follows:

"The rule that equity will not grant relief where there is an adequate remedy at law applies only when on the case stated there is a legal remedy.

"A distinction is to be observed between a case cognizable at law but for which the law has no adequate remedy, and a case that can be adjudicated upon its merits only in a court of equity; in the one the equity court is invoked only for a remedy, in the other for an adjudication of the rights of the parties on the facts. A distinguished writer on this subject would class the one under the head of equity jurisprudence and the other under that of equity jurisdiction. [Pomeroy, Eq. Jur., sec. 131.]

"If on the facts stated the case is of a nature cognizable only in a court of equity the plaintiff will not be shut out of that court on the suggestion that on another state of facts he might recover that which would be equally satisfactory in another tribunal. If one has a mortgage on certain land for his debt, equity will not refuse to hear his suit for a foreclosure upon the suggestion that his debtor is solvent and the debt can be collected through a judgment and execution at law. If the right asserted is a subject of original equity jurisdiction the court will entertain it even though there may be a remedy at law. [Stewart v. Caldwell, 54 Mo. 536; Pratt v. Clark, 57 Mo. 189; Real Estate Savs. Inst. v. Collonious, 63 Mo. 290; Story, Eq. Juris., sec. 80.] And the fact that a plaintiff may have a remedy by suit at law against a third person, as in this case against the surety on the bond, is no ground for refusing relief in equity. [Roll v. Smelting Co., 52 Mo. App. 60.]

Also in Stewart et al. v. Caldwell et al., 54 Mo. 536, 539, we said:

"But fraud belongs to the original jurisdiction, always exercised by a court of equity, and constitutes its 'most ancient foundation; and such jurisdiction is not ousted because a remedy exists at law

for the jurisdictional powers formerly possessed by that court, still continue unaffected by the enlargement which is taking place in the functions of the courts of law; and will not be extinguished by anything short of direct and positive prohibitory enactment."

Again in Pratt v. Clark et al., 57 Mo. 192, we said: "And even if plaintiff had an adequate remedy at law by a suit on the covenants of warranty prior to a breach of those covenants, by reason of an eviction, still this would not preclude him of equitable relief. For the right of a vendor to enforce his lien may well, and frequently does, exist contemporaneously with a right of recovery at law, and the ancient jurisdiction always exercised by courts of equity in cases of a trust, will not be ousted by the fact that courts of law could afford an apparently adequate relief. [1 Sto. Eq. Jur., secs. 64, 80; Stewart v. Caldwell, 54 Mo. 536.]"

Numerous other cases might be cited, but those to which we have called attention sufficiently illustrate the well settled rule.

▊▊ In the case at bar, the petition seeks rescission of the contract of purchase and sale of the notes and deed of trust, and the return of the purchase price on the ground that the contract was induced by false and fraudulent representations. The right claimed and the relief sought is the subject of original equity jurisdiction, and the case as stated could be determined on its merits only in a court of equity. The court below was right in entertaining the case regardless of whether there was or was not a remedy at law. This being true, it is not necessary to either discuss or determine whether plaintiff did or did not have a remedy at law. Where two or more remedies are open to a plaintiff, the plaintiff and not the defendant has the right of election.

This brings us to a consideration of the case on its merits.

In July, 1926, defendant made a loan of $17,000 to one E. W. Grant and took his note for that amount secured by a deed of trust on real estate located at 6309 North Rosebury, St. Louis County. At the time this loan was made the records in the office of the recorder of deeds of St. Louis County showed that said real estate was free and clear of incumbrances, and Grant furnished defendant a certificate of title to that effect from a reputable title company. While the record showed the real estate to be clear of incumbrances at the time the $17,000 loan was made, the facts were that it was incumbered with two deeds of trust at that time, one in the principal sum of $25,000, the other in the sum of $6,000, both of which were in the possession of the lawful owners thereof. Prior to the making of the $17,000 loan, E. W. Grant wrongfully and fraudulently procured the release of the $25,000 and the $6,000 deeds of trust by presenting to the recorder false and fraudulent affidavits stating that the notes secured by said deeds of trust had been paid and delivered to the makers thereof and could not be produced because

lost or destroyed and that said notes were not then in the possession of any person having any lawful claim to the same.

In December, 1926, defendant sold this $17,000 loan to plaintiff for $17,416.50, which represented the face of the note with accrued interest. Plaintiff contends that defendant falsely represented that the $17,000 note was secured by a first deed of trust, and that she believed said representation to be true, and relying thereon was induced to buy the note and pay defendant therefor. There was no showing of actual fraud. So far as the pleadings and evidence go, defendant believed it was selling, and plaintiff believed she was buying a first deed of trust. Although no actual fraud was shown, if defendant represented that the $17,000 note was secured by a first deed of trust, and plaintiff believed such representations to be true, relied thereon and was thereby induced to part with her money, such representations, though innocently made, would amount to constructive fraud which would entitle plaintiff to rescind the contract and recover the money she paid for the note. [12 R. C. L. 345; Glasscock v. Minor, 11 Mo. 656; Cook v. Smith, 187 Mo. App. 561, 170 S. W. 672.]

Leo Ellenburg, a son of plaintiff, testified in substance that when his father died he left his mother about $20,000 from life insurance; that his mother requested him to find her a safe investment that would yield her some interest on which she could live; that he and his wife went to the office of defendant; that he introduced himself to Mr. Dudley, secretary of defendant company; that he told Dudley he had some money he wanted to invest for a widowed mother in a gilt edge first mortgage only; that Dudley referred him to a lady in the office; that the lady took his name and address and promised to mail him defendant's weekly bulletin which listed the mortgages defendant had for sale; that in December he received a bulletin from defendant which listed the $17,000 note secured by deed of trust on property at 6309 North Rosebury which he afterward purchased; that he and his wife examined the property to determine whether it was of sufficient value to secure the loan; that when he talked with Dudley he told him that he was interested only in first mortgages, and Dudley told him that defendant dealt only in first mortgages.

The testimony of Mrs. Leo Ellenburg corroborated that given by her husband. She also testified that plaintiff asked her to go to defendant's office and she went a second time; that she talked to the lady again about the loan; that the lady told her it was the best first mortgage they had; that they had made that particular loan just a few weeks before; that after the lady reassured her about the loan, she talked with her husband over the telephone and advised him to take the loan as defendant had nothing of a similar value as good and as new; that at that time she suggested to her husband that he had

better get Mr. Levi to handle the details of the transaction, which he said he would do, and she then advised the lady that Mr. Levi would be in later and purchase the loan for them. She also testified that the lady gave her to understand that defendant sold only first deeds of trust; that they were taking no chances in buying the loan; that it was the best loan defendant had to offer and was as good as money in the bank.

Leo Ellenburg further testified that he employed Mr. Levi, a real estate man to close the deal because he was experienced in such matters, and better able to look after the details and safeguard their interests.

Levi testified that Leo Ellenburg first saw him on December fifteenth or sixteenth and told him that he had looked at the loan; that he told Ellenburg he would look at the property and let him know what he thought about it; that he looked at the property the next day, and got the certificate of title from defendant and looked it over; that he told Ellenburg that a $17,000 loan on a first deed of trust would be perfectly good; that Ellenburg said, "All right, I will think this over until the next day;" that on December 17, Ellenburg brought him two checks, one for $17,000, the other for $416.50; that with these checks he closed the deal and paid defendant for the note and accrued interest.

The evidence regarding these representations is not contradicted. While Mr. Dudley, defendant's secretary, testified that he had no recollection of having a conversation with Leo Ellenburg regarding the purchase of deeds of trust, he did not testify that such a conversation did not take place. Miss Hunt's evidence was to the same effect. While she was not called as a witness, counsel agreed that if present she would testify that she did not know Mrs. Ellenburg and had no recollection of having made the representations with which she was charged in Mrs. Ellenburg's testimony; that she would not of her own accord make such representations.

The evidence fixes the value of the real estate at from $28,000 to $35,000. With a first and second deed of trust thereon totaling $31,000, the deed of trust securing the $17,000 note which plaintiff purchased was a bad third without sufficient value in the property to secure the payment of the note. The weight of the evidence supports the conclusion that defendant falsely represented that the note plaintiff purchased was secured by a first deed of trust. This false representation was not a mere expression of an opinion, but concerned a material fact in the transaction, and if plaintiff reasonably believed same to be true, relied thereon and was thereby induced to purchase the note, she is entitled to rescind the contract and recover the purchase price, even though the false representations were innocently and honestly made. However, defendant contends that plaintiff did not rely on such representations, but in fact was induced to

buy the note upon the separate investigation and advice of her own agent, Levi.

It appears from the evidence of Leo Ellenburg's wife that they decided to buy the note before Levi was employed to look after the details of closing the transaction. Concerning a conversation she had over the telephone with her husband while at the office of defendant on her last visit she testified, "Mr. Ellenburg told me over the phone when I called him at the office that he would have Mr. Levi look after the details of it, and I told the young lady that Mr. Levi would be in later and purchase it for us. Mr. Ellenburg had decided to take it and there was, therefore, no need for me taking others which she submitted to me." If Ellenburg had decided to take the loan at the time this telephone conversation occurred, he did not rely on representations or investigations made by Levi because Levi did not know of the transaction and had not been employed at that time. It is true that Ellenburg employed Levi to look after the details of the transaction, but there is no evidence that he requested Levi to investigate the title to the property or examine the certificate of title. Levi testified that he examined the certificate of title and found that it showed the $17,000 deed of trust to be a first. He also testified that he would not buy a deed of trust or permit a client to do so without a certificate of title, but there is no evidence that he ever told Ellenburg that he had examined the certificate of title or told him what the certificate showed. He did tell Ellenburg that the $17,000 loan on *a first deed of trust would be good,* but he did not tell him that the deed of trust was, in fact, a first or that the certificate of title so showed. Levi's employment to look after details does not necessarily show that Ellenburg relied on his investigation and advice as to whether or not the $17,000 deed of trust was a first lien on the property.

In fact the evidence shows otherwise. We say this because Ellenburg delivered to Levi the checks necessary to close the deal without knowing that he had examined the certificate of title, and without advice from him that the deed of trust in question was a first or that the certificate of title so showed. Neither can it be said that Ellenburgs relied on the certificate of title, because neither of them saw it and no one told them what it showed. No one except the agents of defendant with whom the Ellenburgs dealt represented to them that the deed of trust in question was a first lien on the property. We therefore hold that the weight of the evidence warrants the conclusion that they relied and acted upon the representations of defendant's agents.

Appellant contends that ordinary prudence would dictate that the Ellenburgs should have inquired about Miss Hunt's authority and position before relying or acting on representations made by her.

A sufficient answer to this contention is that when the Ellenburgs informed Mr. Dudley, defendant's secretary, that they wanted to buy a gilt edge first deed of trust, he referred them to Miss Hunt. After referring them to Miss Hunt as a person with whom they could deal, defendant is not in a position to claim she had no authority in the premises, or that the Ellenburgs should have investigated that question before dealing with her.

Levi testified that he did not disclose to the defendant whom he represented and that defendant made no representations of any kind to him regarding the deed of trust. Based on this evidence, defendant contends that Levi could not have maintained rescission because of false representations, and as he represented an undisclosed principal, such principal stands in the shoes of the agent.

Conceding the proposition of law contended for, the contention made overlooks important evidence tending to show that defendant knew whom Levi represented. Ellenburg's wife testified that on her last visit to defendant's office she informed the lady with whom they were and had been dealing, that Mr. Levi would be in later and purchase the loan for them. In addition to this evidence, the $17,-000 check which defendant received as payment for the note, was payable to Leo Ellenburg who assigned it to J. M. Levi & Co., and they in turn assigned it to defendant.

■ Contention is made that error was committed in refusing to permit witness Daly to testify to a custom of many years standing among real estate men in the City and County of St. Louis to rely solely on the certificate of title of a reputable title company in the purchase and sale of deeds of trust.

Levi, Edward K. Love and G. H. Dudley all testified that in making, buying and selling deeds of trust, it was the prevailing custom among real estate men to rely wholly on a certificate of title of a reputable title company to show the state of the record. It may be conceded that such a custom prevailed among real estate men, but it is not binding on plaintiff. Neither she nor her son and daughter-in-law, who represented her in the purchase of the loan were engaged in the real estate business. They had never bought a loan before, and it was not shown that they had any knowledge of the alleged custom. Neither can it be said that plaintiff was bound by Levi's knowledge of the custom for two reasons, (1) they had decided to buy the loan and so notified defendant before they employed Levi, and (2) Levi was not employed to determine the status of the title or of the record and plaintiff did not look to or rely upon him to do so. Our reasons for so concluding are heretofore set out and we will not repeat them here.

Defendant cites People's National Bank v. Central Trust Co., 179 Mo. 648, 78 S. W. 618, in support of the contention that the alleged custom was binding on plaintiff. That was an action for fraud and

deceit in which plaintiff was required to prove actual fraud in the sale of commercial paper known as cattle paper. The court held that the plaintiff was a large dealer in that character of paper, knew the custom prevailing regarding the sale of such paper and for that reason was bound by the custom. Such is not the situation in the case at bar and for that reason the cited case is not in point.

■ Further contention is made that there was no showing that the alleged false representations were in fact false.

This contention is based on the assumption that as suits pending to set aside the false and fraudulent releases of the $25,000 and $6,000 deeds of trust had not been determined at the time this suit was brought, it left the $17,000 deed of trust which plaintiff purchased standing on the record as a first lien, and for that reason plaintiff had no cause of action at the time this suit was instituted.

The burden was on plaintiff to show that the $17,000 deed of trust was not a first lien on the property at the time the suit was instituted. She did show that fact by the testimony of the owners of the two prior deeds of trust to the effect that they were the owners and holders of the $25,000 and $6,000 deeds of trust, no part of which had been paid, and that such deeds of trust were wrongfully and fraudulently released of record without their knowledge or consent.

Some other contentions are made but they are answered by what we have said.

The decree below should be affirmed. It is so ordered. All concur, except *Hays, J.*, not voting, because not a member of the court at the time cause was submitted.