**EVERGREEN NATIONAL CORPORATION, Plaintiff–Appellant,**

v.

**Phillip W. CARR and Alice M. Carr, Husband and Wife, and Kirk Manion, Defendants–Respondents.**

**No. 25621.**

Missouri Court of Appeals,
Southern District.

March 30, 2004.

Gary W. Allman, Allman, Ingrum, Wilson & Akers, LLC., Hollister, for appellant.

William L. Carr, Kansas City, for respondents.

Before SHRUM, J., RAHMEYER, C.J.-P.J., BATES, J.

PER CURIAM.

Evergreen National Corporation ("Evergreen") filed an "Action For Rescission" against Defendants. Evergreen sought rescission of a deed for five lots by alleging Defendants' fraudulent representations about the lots induced Evergreen to buy them. The court refused to rescind the sale. Evergreen appeals. This court affirms.

## FACTS

In the fall of 1992, Defendants owned land in Stone County, Missouri, which they divided and platted into a nine-lot subdivision known as Hawthorne Ridge Subdivision. A plat thereof was filed in the recorder's office on November 13, 1992. It depicted Lot 5 as a triangular lot with the

"hypotenuse" side of the lot abutting the south side of county road DD for a distance of 302.83 feet.

Later, in June 1993, Defendants filed with the recorder's office a plat entitled "Hawthorne Ridge, Amended Plat of Lot 5." This amended plat reduced the size of Lot 5 by severing from its east end a tract designated, "well lot." By the amended plat, Lot 5 had fifty feet less frontage on county road DD, was 69.10 feet shorter on the south side, and did not include a water well that had been drilled on the east point of Lot 5. As Defendant Phillip Carr explained it, "we amended that plat to carve out the well so that it would not be a part of lot 5." He also testified the well lot was used to provide water to other lots in "both subdivisions."

In September 1997, Defendants listed certain lots in the Hawthorn Ridge subdivision for sale through Aux Arcs Real Estate ("Aux Arcs"). In September 1999, they still owned Lots 6, 7, 8, and 9 of the Hawthorne Ridge subdivision, Lot 5 of the Hawthorn Ridge Subdivision per the amended plat thereof, and the "well lot" as depicted on the amended plat of Lot 5.

In late summer or early fall of 1999, Don R. Reed learned that Aux Arcs was offering some of Defendants' lots for sale. He told Jennifer Busen ("Busen"), a real estate agent associated with Kimberling Hills Real Estate, that he had some interest in the lots. Busen then used a multi-listing service to procure price and description information. Thereafter, Don and Lisa Reed ("the Reeds") signed a contract (prepared by Busen) in which the Reeds offered to buy "all of Lots 5, 6, 7, 8 and 9 Hawthorn Ridge" located in Reeds Spring, Stone County, Missouri, for $75,000. The contract did not contain a reference to Lot 5 per an amended plat. It did, however, have this notation in the "description" paragraph: "(legal description on updated abstract or title insurance commitment to govern)." The legal description paragraph also recited: "The following items are also included in the sale: *water to each lot.*"

As required by the contract, Defendants, acting through Aux Arcs, procured a title insurance commitment. This commitment described the subject property as "Lot 5, Hawthorn Ridge Subdivision, *as per the amended plat thereof;* also lots 6, 7, 8 and 9 Hawthorn Ridge Subdivision, per the recorded plat thereof." (Emphasis supplied.) Likewise, the deed that was prepared and used at the Defendants/Reed closing described the property being conveyed as "Lot 5, Hawthorn Ridge Subdivision, *as per the amended plat thereof;* also Lots 6, 7, 8, and 9 Hawthorn Ridge Subdivision, per the recorded plat thereof."

In acquiring this property, the Reeds acted as undisclosed agents for Evergreen. Consequently, once the Reeds closed with Defendants on January 7, 2000, they immediately conveyed the property to Evergreen. Their deed to Evergreen contained the same legal description by which the Reeds acquired the property.[1]

1. This court *sua sponte* considered whether Evergreen, as an undisclosed principal, had authority to bring this suit. We concluded that the fact that Reeds made the contract in their names and initially took title to the lots in their names did not preclude Evergreen (undisclosed principal) from suing to rescind the transaction as the real party in interest. We reached that conclusion based on our holding in *Phillips v. Hoke Const., Inc.,* 834 S.W.2d 785, 788[3] (Mo.App.1992), and the authorities cited therein, and in reliance on the general rule enunciated in *Ferris v. Thaw,* 72 Mo. 446, 450 (1880) (holding if an agent possesses authority to make a contract, and makes it in his own name, whether he discloses his agency or not, or his principal or not, either agent or principal may sue or be sued on the contract).

Ultimately, a dispute arose between Evergreen and the Homeowners of Hawthorn Property Association, Inc., over association dues and ownership of the water well lot, i.e., the tract severed from Lot 5 via the amended plat. On September 14, 2001, Defendants conveyed the "water well lot" to the corporate homeowners' association. Evergreen then filed this suit on October 16, 2001, seeking rescission of its purchase (through the Reeds) of the five lots from Defendants. Evergreen's petition alleged, *inter alia,* that "Lot 5, Hawthorn Ridge Subdivision, as per the amended plat, was not the complete and entirety of Lot 5, Hawthorn Ridge Subdivision, as contracted for, or as represented by the Defendants."

Following trial, the trial court ruled for Defendants. It found, *inter alia,* that Evergreen:

"has failed to meet its burden of proof on Count I [equitable rescission count] and has failed to prove all essential elements with respect to its claim of misrepresentation which would entitle [Evergreen] to a rescission of the contract. The court specifically notes that [Evergreen's] representative, Mr. Plaster, is a highly successful developer with a keen business acumen who along with agent, Don Reed, actually inspected the property in question and [Evergreen] had procured the services of a realtor. Further defendants Carr did not possess superior knowledge about the well and amended plat which was not within the reach of [Evergreen]. The Court therefore finds the issues on Count I in favor of defendants Carr and against [Evergreen]."

This appeal by Evergreen followed.

## STANDARD OF REVIEW

Appellate review of a court-tried claim for rescission is governed by the rules stated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). *Droz v. Trump,* 965 S.W.2d 436, 440 (Mo.App. 1998). Specifically, the trial court's judgment will be sustained unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.* at 440[1].

## DISCUSSION AND DECISION

Evergreen maintains the trial court committed reversible error in that

"THE COURT HELD [EVERGREEN] HAD NOT PROVEN ALL ESSENTIAL ELEMENTS OF MISREPRESENTATION AND WAS NOT ENTITLED TO RESCISSION BY DECIDING THAT:

"(1) [EVERGREEN'S] CEO WAS A HIGHLY SUCCESSFUL DEVELOPER,

"(2) PLASTER AND REED HAD EXAMINED THE PROPERTY,

"(3) [EVERGREEN] HAD PROCURED THE SERVICES OF A REALTOR, AND

"(4) [DEFENDANTS] DID NOT POSSESS SUPERIOR KNOWLEDGE ABOUT THE WELL AND AMENDED PLAT WHICH WAS BEYOND THE REACH OF [EVERGREEN],

BECAUSE, AS A MATTER OF LAW, NONE OF THESE ISSUES PRECLUDE THE GRANTING OF RESCISSION BASED UPON CONSTRUCTIVE FRAUD, AND WERE ERRONEOUSLY DECLARED AND APPLIED BY THE COURT, THEREBY REQUIRING [EVERGREEN] TO PROVE ELEMENTS OF CONSTRUCTIVE FRAUD NOT REQUIRED BY LAW PREJUDICIALLY EFFECTING [SIC] THE POTENTIAL RESULT OF THE CASE."

■ Evergreen asserts it was induced to buy the lots because of fraudulent misrepresentations regarding the lots. "When fraud is alleged the burden of proof as to each element falls on the party asserting the fraud and fraud is never presumed." *Magna Bank of Madison County v. W.P. Foods, Inc.*, 926 S.W.2d 157, 162[14] (Mo.App.1996).

■ Comprehensively stated, the elements of a fraud action are, " '(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the right to rely thereon, and (9) the hearer's consequent and proximately caused injury.' " *Cottonhill Inv. v. Boatmen's Nat. Bank*, 887 S.W.2d 742, 744[9] (Mo.App.1994) (quoting *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988)).

■ When fraudulent misrepresentations are alleged, "a party may seek to affirm the contract and sue for damages or may disaffirm the contract, including a deed and sue for rescission." *Cottonhill*, 887 S.W.2d at 744[10]. A party who affirms the contract and sues for damages must prove "actual fraud," i.e., must prove "the speaker's knowledge of its falsity" as required by the first prong of the fourth element of a fraudulent misrepresentation case. *See Ellenburg v. Edward K. Love*

*Realty Co.*, 332 Mo. 766, 59 S.W.2d 625, 627 (1933).

■ On the other hand, when a party opts to disaffirm the contract and sue for rescission, such party can prevail by proving either actual fraud *or* constructive fraud. *See Droz*, 965 S.W.2d at 440–41. This follows because rescission can be based upon a false representation, "which, although described or labeled as fraudulent, is in reality a misrepresentation or concealment made innocently as a result of a misapprehension or mistake." *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 227[6] (Mo.App.1980). Historically, fraudulent misrepresentation in a rescission case has been labeled "constructive fraud" in those instances where the fourth-element allegation is that the speaker was ignorant of the falsity of his or her representation. *Ellenburg*, 59 S.W.2d at 627; *Osterberger*, 599 S.W.2d at 227; *Droz*, 965 S.W.2d at 441.[2]

■ Evergreen's point relied on maintains the trial judge ruled against it because of his mistaken understanding and application of the law of constructive fraud. According to Evergreen, this is conclusively shown by the judge's findings that Evergreen's CEO (Mr. Plaster) was a highly successful developer, Plaster and Reed had examined the property, Evergreen employed a realtor to represent it, and Defendants did not have superior knowledge about the well and amended plat beyond that which was within the reach of Evergreen. As noted earlier, however, the only difference between a rescission case

---

2. In *Ellenburg*, 59 S.W.2d at 627, the court explained:

"Appellant[ ] ... overlooks the distinction between a case of actual fraud and one of constructive fraud. In actions at law to recover damages for fraud and deceit, it must be shown that false representations were made, with knowledge of their falsity and

with a fraudulent intent, but where, as in the case at bar, an action in equity is brought to rescind a contract on the ground that it was induced by fraudulent representations, it is not necessary to show that the party making the fraudulent representations knew of their falsity, or made them with an intent to cheat and defraud."

grounded on "actual fraud" and one based on "constructive fraud" is in the proof required for element four, i.e., proof that the speaker knew the representation was false (actual fraud) versus proof that the speaker made an innocent misrepresentation (constructive fraud). *Droz,* 965 S.W.2d at 441. Evergreen does not point to, nor can we find, a basis for saying that the fact findings cited by Evergreen were used by the trial judge to analyze and decide the "constructive fraud" element of the case. This is understandable because the facts found by the trial judge neither supported nor disproved the constructive fraud element of the case.

Although nothing in the record reveals how the trial judge used its fact findings, we presume he knew and properly applied the law in rendering his judgment. *See Harrison v. Coomber Realty & Investment Co.,* 359 Mo. 862, 224 S.W.2d 63, 64 (1949); *C.A.W. v. Weston,* 58 S.W.3d 909, 914 (Mo. App.2001) (citing *Dycus v. Cross,* 869 S.W.2d 745, 751 (Mo.banc 1994)). Since the facts found by the trial court were not relevant in resolving element four, we must assume the trial court did not use its findings to decide that issue as Evergreen contends. *Harrison,* 224 S.W.2d at 64. We further assume that the trial court used the fact findings where they were relevant, i.e., in deciding element six (whether Evergreen was ignorant of the falsity of the representation), or element seven (whether Evergreen relied on the representation being true), or element eight (whether Evergreen had the right to rely). *Id.*

As noted earlier, we cannot discern from the judgment, or elsewhere, which one or more of the many fraudulent misrepresentation elements the trial judge found Evergreen had failed to prove. Although Evergreen argues the trial judge ruled against it because of his mistaken understanding

and application of the law of constructive fraud (as evidenced by his fact findings), we find no merit in that argument for reasons fully explained above. Accordingly, Evergreen's point relied on is denied.

Having denied Evergreen's only point relied on, we are left with nothing further to review. The trial judge found Evergreen "failed to prove all essential elements [of] ... its claim of misrepresentation which would entitle [Evergreen] to rescission of the contract," without stating what elements he found Evergreen failed to prove. To the extent the trial judge found Evergreen had failed to prove other elements of its case, such findings have not been challenged on appeal. "Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, allegations of error not briefed ... shall not be considered in any civil appeal...." Rule 84.13(a). It is not the duty of this court to become an advocate for Evergreen and search the record for error; the judgment rendered is presumptively correct and Evergreen has the burden to demonstrate that it was erroneous. *See Hampton v. Davenport,* 86 S.W.3d 494, 497[9] (Mo.App.2002). Evergreen has not carried that burden; consequently the judgment must be affirmed.

The judgment of the trial court is affirmed.