

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| JASON WOLK, ET AL., | ) | No. ED112371 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of Ste. Genevieve County |
| v. | ) | Cause No. 23SG-CC00025 |
| | ) | |
| GRINNELL MUTUAL REINSURANCE | ) | Honorable Timothy W. Inman |
| CO., | ) | |
| | ) | |
| Respondent. | ) | Filed: October 22, 2024 |

### Introduction

This case arises from a dispute between Jason Wolk and Jeffrey Meyer ("Appellants") and Grinnell Mutual Reinsurance Company ("Respondent") over a workers' compensation subrogation lien held by Grinnell. After the parties entered a settlement agreement to resolve this dispute, Appellants sought a declaratory judgment from the trial court interpreting Section 287.150.3 and their agreement. Appellants argue the trial court erred in awarding Respondent the entire amount of its lien, the settlement agreement resulted from a mutual mistake, and we should rescind the agreement.

The trial court properly determined the "balance of the recovery" according to Section 287.150.3, then applied the parties' settlement agreement to determine Respondent's share of the

balance of the recovery. The parties' agreement was not the result of a mutual mistake, and we decline to rescind the agreement. The amended judgment of the trial court is affirmed.

**Factual and Procedural Background**

Facts

Appellants were injured while working for their employer, J. Wolk Construction LLC. Respondent, the employer's workers' compensation insurer, paid Appellant Wolk $900,969.83 and Appellant Meyer $815,829.47 as compensation for their injuries under the Workers' Compensation Act.

Procedural Background

Appellants brought a personal injury suit against multiple third parties. Before that suit went to trial, one of the defendants settled with Appellants for a total of $1,000,000, the limits of its insurance policy. As a result, each Appellant repaid Respondent $113,517.05, a portion of the workers' compensation benefits it paid to Appellants.

On April 21, 2021, each of Appellants separately entered a settlement agreement ("Settlement Agreement") with Respondent in anticipation of any future award Appellants might receive from the ongoing personal injury suit. The Settlement Agreement stated at the outset: "This is a compromise of a disputed case with respect to subrogation rights arising under Section 287.150 RSMo," the statute setting out the method for repaying subrogation interests in workers' compensation claims.[1] The parties agreed to first deduct attorney fees in the form of a 40 percent contingency fee. From the remaining amount, they would deduct 30 percent for Appellants' wives' loss of consortium claims. Next, they would divide the remaining 70 percent of the award into a one-third share to each Appellant, Appellants' counsel, and Respondent in full satisfaction of its

---

[1] Unless otherwise indicated, all statutory references are to RSMo (2016) as amended.

subrogation interests. The Settlement Agreement limited Respondent's recovery "up to the amount at which [Respondent] is fully repaid for all moneys paid in workers' compensation benefits to [Appellant]."

At the conclusion of the third party personal injury suit, the trial jury awarded Wolk $11,000,000, assessing comparative fault at 10 percent, and Wolk's wife $1,000,000 for loss of consortium. The jury awarded Meyer $13,500,000, and Meyer's wife $3,000,000 for loss of consortium. After the jury verdict, Appellants and the trial defendants entered a final settlement agreement limiting the defendants' damages to $20,000,000, which Appellants agreed to split evenly.

Appellants and Respondent thereafter were unable to agree on the division of the proceeds from the personal injury suit to satisfy Respondent's subrogation lien pursuant to Section 287.150.3 and the April 21, 2021 Settlement Agreement. Appellants thus filed a petition for declaratory judgment asking the trial court to interpret the Settlement Agreement in accord with Section 287.150.3.

On October 18, 2023, the trial court entered judgment. Appellants subsequently filed a motion to amend the judgment, and Respondent opposed the motion. The trial court granted the motion and entered an amended judgment on December 21, 2023.

In the amended judgment, the trial court interpreted Section 287.150.3 and applied its terms to the parties' Settlement Agreement. Section 287.150.3 states, in pertinent part:

> Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part

of the employee. Notwithstanding the foregoing provision, the balance of the recovery may be divided between the employer and the employee or his dependents as they may otherwise agree. . . .[2]

From the plain language of the statute, the court concluded in the amended judgment:

34.     . . . [T]he third sentence of Section 287.150.3 . . . specifically states "Notwithstanding the foregoing provision, the <u>balance of the recovery</u> . . . ."
35.     It is quite clear from the reading of Section 287.150, that the term "balance of the recovery" is the amount left after the expenses and attorney fees have been deducted.
36.     Both Petitioners and Respondents agree that Jason Wolk's net recovery is $5,467.975.39, after deduction for attorney fees and expenses. Therefore, $5,467,975.39 is the "balance of recovery" as defined in Section 287.150.3.
37.     Both Petitioners and Respondents agree that Jeffrey Meyer's net recovery is $4,880,506.96, after deduction for attorney fees and expenses. Therefore, $4,880,506.96 is the "balance of recovery" as defined in Section 287.150.3.

(emphasis in original).

Thus, the court concluded the "Notwithstanding" clause in Section 287.150.3 allows the parties to agree to divide only the "balance of the recovery." The "balance of the recovery," as defined in Section 287.150.3, is the amount of the recovery from the third party suit, less the expenses of the recovery, including a reasonable attorney fee.

After deducting the attorney fees and expenses to arrive at the balance of the recovery, the trial court then divided that balance according to the terms of Appellants' and Respondent's Settlement Agreement. Respondent argued that the $113,517.05 each Appellant repaid it from the previous settlement should not be credited against the total amounts of $900,969.83 it paid Appellant Wolk and $815,829.47 it paid Appellant Meyer in workers' compensation benefits. The trial court rejected Respondent's argument based on the terms of the Settlement Agreement limiting Respondent's recovery "up to the amount at which [Respondent] is fully repaid for all

---

[2] In subrogation cases, workers' compensation insurers may stand in the employer's place for the purposes of Section 287.150.3. *See Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778 (Mo. banc 2003) (applying Section 287.150.3 to a workers' compensation insurer as the "employer" for the purposes of Section 287.150.3).

4

moneys paid in workers' compensation benefits to [Appellant]." Accordingly, the court found that Appellant Wolk owed Respondent $787,452.78 ($900,969.83, less $113,517.05), and Appellant Meyer owed Respondent $702,312.42 ($815,829.47, less $113,517.05), capping Respondent's share of the balance of the recovery at the amount of its lien.

Appellants now appeal from the trial court's amended judgment.

## Discussion

### Timeliness of Appeal

As a preliminary matter, in a motion to dismiss for lack of jurisdiction and in its appellate brief, Respondent argues Appellants untimely filed their notice of appeal. We denied the motion in a previous order and, for the same reasons, we deny the argument in Respondent's brief on appeal.

A notice of appeal must be submitted not later than ten days after a judgment becomes final. Rule 81.04(a).[3] If no post-trial motion is filed, the judgment becomes final at the expiration of 30 days. Rule 81.05(a)(1). When an amended judgment is entered, the timeliness of the notice of appeal is calculated from the date the amended judgment becomes final. *Ritter Landscaping v. Meeks*, 950 S.W.2d 495, 496 (Mo. App. E.D. 1997).

Here, the court entered its amended judgment on December 21, 2023, and the amended judgment became final 30 days later, on January 22, 2024. Appellants timely filed their notice of appeal within ten days, on January 30, 2024, pursuant to Rules 81.04(a) and 81.05(a)(1).

### Standard of Review

---

[3] All Rule references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

Declaratory judgments are subject to the same standard of review as other court-tried cases. *City of Kansas City v. Chastain*, 420 S.W.3d 550, 554 (Mo. banc 2014). "The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (quoting *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003)). "Statutory interpretation is a question of law, which is reviewed *de novo*." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 122 (Mo. banc 2023). This Court must interpret the statute so as to "give effect to legislative intent as reflected in the plain language of the statute at issue." *Id.* (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014)) (internal quotations omitted).

<u>Point I</u>

In their first point, Appellants argue the trial court erred in awarding Respondent the entire amount of its lien because Section 287.150.3 does not allow Respondent to recoup its attorney fees and expenses from Appellants' share of the recovery.

To determine whether the trial court properly applied Section 287.150.3, we must interpret the language of the statute. There is no caselaw interpreting the "Notwithstanding" clause of Section 287.150.3, making this is an issue of first impression.

Again, Section 287.150.3 states:

Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part of the employee. Notwithstanding the foregoing provision, the balance of the recovery may be divided between the employer and the employee or his dependents as they may otherwise agree. . . .

Appellants argue that Section 287.150.3 does not allow Respondent to recoup its attorney fees and expenses from Appellants' share of the recovery, and therefore the trial court erroneously applied the statute by awarding Respondent the entirety of its lien without a reduction for attorney fees and expenses. This argument misapprehends the amended judgment.

Once the court deducted the expenses of the recovery, including reasonable attorney fees, from the recovery to determine the balance of the recovery pursuant to the first sentence of Section 287.150.3, the parties' Settlement Agreement governed the division of the balance of the recovery, as permitted by the third sentence of Section 287.150.3: "Notwithstanding the foregoing provision, the balance of the recovery may be divided between the employer and the employee or his dependents as they may otherwise agree." The Settlement Agreement explicitly allocated a portion of the balance of the recovery to Respondent in full satisfaction of its subrogation interests in the recovery. The trial court gave effect to the Settlement Agreement in the amended judgment.[4]

This approach is consistent with the seminal case interpreting Section 287.150.3, *Ruediger v. Kallmeyer Bros. Service*, 501 S.W.2d 56 (Mo. banc 1976). There, the Supreme Court of Missouri provided a formula for allocating the recovery from a third party lawsuit. First, "the expenses of the third party litigation should be deducted from the third party recovery." *Id.* at 59. Second, "the balance should be apportioned in the same ratio that the amount paid by the employer at the time of the third party recovery bears to the total amount recovered from the third party . . ." *Id.*[5]

---

[4] Appellants also seem to argue the trial court erroneously applied Section 287.150.3 because the amended judgment states "the allocation rules set forth therein do not apply where the parties enter into their own settlement agreement regarding distribution of funds." Appellants ignore the rest of the amended judgment, in which the court properly applied Section 287.150.3 to limit the scope of the Settlement Agreement to the division of the balance of the recovery.

[5] In *Ruediger*'s progeny, *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 780 (Mo. banc 2003), the Court more specifically set out the formula for allocating the recovery:

The first step is to calculate the employee's net recovery:

This second step of the *Ruediger* formula applies the default apportionment of the balance of the recovery found in the second sentence of Section 287.150.3. *See Ruediger*, 501 S.W.2d at 59. Thus, like the second sentence of Section 287.150.3, the second step of the *Ruediger* formula may be displaced by agreement pursuant to the third sentence of Section 287.150.3: "Notwithstanding the foregoing provision, the balance of the recovery may be divided between the employer and the employee or his dependents as they may otherwise agree."[6] In other words, the place "to begin calculating the employer's share is the balance of the recovery less attorney fees and expenses," *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778, 782 (Mo. banc 2003), and the parties may otherwise agree to a division of the balance of the recovery. Section 287.150.3.

---

Gross Recovery (GR)—Attorneys Fees (AF)—Expenses (E) = Net Recovery (NR).
The second step is to determine the ratio contemplated in the statute:
Employer's Payment (EP) / Total Amount Recovered or Total Damages (T) = Ratio (R).
The third step is to apply the ratio to the net recovery to determine subrogation amount: NR X R.

[6] The version of Section 287.150.3 in effect when *Ruediger* was decided stated: "After the expenses and attorney fee has been paid the balance of the recovery shall be apportioned between the employer and the employee . . . in the same ratio that the amount due the employer bears to the total amount recovered, *or the balance of the recovery may be divided between the employer and the employee . . . as they may agree.*" RSMo §287.150.3 (1969) (emphasis added). The amended Section 287.150.3 applicable here, states: "After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee . . . in the same ratio that the amount due the employer bears to the total amount recovered *if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part of the employee. Notwithstanding the foregoing provision, the balance of the recovery may be divided between the employer and the employee . . . as they may otherwise agree,*" RSMo §287.150.3 (2016) (emphasis added). The amendment added the comparative fault language, then set apart and clarified in a separate sentence that the parties may otherwise agree to a division of the balance of the recovery.

Here, the parties entered a Settlement Agreement in which they agreed to a division of the balance of the recovery.[7] Contrary to Appellants' argument, the trial court correctly determined the balance of the recovery according to the statute and the *Ruediger* formula, then applied the terms of the Settlement Agreement to determine Respondent's share of the balance of the recovery.

Point I is denied.

<u>Point II</u>

Second, Appellants urge us to rescind the Settlement Agreement because it was based on a mutual mistake. Appellants claim they preserved this issue for appeal in their trial brief and motion for new trial, and that the trial court addressed the issue in its amended judgment. This issue is nowhere to be found in Appellants' pleadings or in the amended judgment. Issues not raised before the trial court are not preserved on appeal, and we do not consider them. *Custom Construction Solutions, LLC v. B&P Construction, Inc.*, 684 S.W.3d 148, 169 (Mo. App. E.D. 2023) (citing *Ford v. Skaggs Chiropractic, LLC*, 599 S.W.3d 264, 268–69 (Mo. App. S.D. 2020)).

Even if the issue were preserved, it would fail on its merits. The Settlement Agreement did not result from a mutual mistake. Mutual mistake occurs when there is a mistaken belief among both parties as to a past or present material fact regarding the contract. *Czarnecki v. Phillips Pipe Line Co.*, 524 S.W.2d 153, 157 (Mo. App. 1975); *see also Alea London Ltd. v. Bono-Soltysiak Enterprises*, 186 S.W.3d 403, 415 (Mo. App. E.D. 2006). Because a mutual mistake is based on a mistake of fact, "a mutual mistake in prophecy or opinion may not be taken as a ground for rescission where such mistake becomes evident through the passage of time." *Bogus v. Birenbaum*,

---

[7] The Settlement Agreement also purported to govern the initial division of attorney fees, but the trial court correctly rejected that portion of the agreement as contrary to the mandate in the first sentence of Section 287.150.3 that "the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee."

375 S.W.2d 156, 159–60 (Mo. Div. 2 1964); *see also Shop 'N Save Warehouse Foods, Inc. v. Soffer*, 918 S.W.2d 851, 863 (Mo. App. E.D. 1996).

Appellants argue the Settlement Agreement would make sense only if the post-trial settlement had been for the defendants' insurance policy limits of $4,000,000, just as the first settlement had been for the defendant's policy limits of $1,000,000. Instead, the post-trial settlement was $20,000,000, five times larger than Appellants and Respondent had anticipated. Appellants' theory boils down to their failing to accurately predict the amount of the future recovery. The fact that the post-trial settlement was larger than anticipated is not a mistake as to a past or present material fact and is precisely the sort of prophecy excepted from the doctrine of mutual mistake. *See Bogus*, 375 S.W.2d at 159–60; *Shop 'N Save Warehouse Foods, Inc.*, 918 S.W.2d at 863.

Appellants also suggest we rescind the contract on vague notions of "equity and reasonableness." This suggestion was not included in Appellants' point relied on. According to Rule 84.04, points relied on must "[s]tate concisely the legal reasons for the appellant's claim of reversible error." Rule 84.04(d)(1)(B). Points relied on are "[c]entral to the formation of a brief." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). Thus, issues not raised in a point relied on are not preserved for our review. *See id.*

This Court nevertheless may review Appellants' argument *ex gratia* because it is readily understandable. *Indelicato v. McBride & Son Management Co., LLC*, 646 S.W.3d 305, 308 (Mo. App. E.D. 2022) ("We have reviewed noncompliant briefs *ex gratia* where the appellant's argument is readily understandable.").

First, as a matter of law, amorphous concepts of "equity and reasonableness" do not allow us to undo the parties' contract. The equitable remedy of rescission requires a finding of actual or

constructive fraud. *Evergreen Nat'l Corp. v. Carr*, 129 S.W.3d 492, 496 (Mo. App. S.D. 2004); *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221, 227 (Mo. App. E.D. 1980). Appellants do not allege fraud.[8]

Second, as a matter of fact, while the Settlement Agreement permitted Respondent to recover the total amount of its lien, it also *limited* Respondent's recovery "up to the amount at which [Respondent] is fully repaid for all moneys paid in workers' compensation benefits to [Appellants]." In fact, when Respondent insisted it should receive more than the total amount of its lien, the trial court demurred because the terms of the Settlement Agreement capped Respondent's recovery at the amount it paid in workers' compensation benefits. Even if we could rescind a contract based on "equity and reasonableness," we would not do so here.

Point II is denied.

### Conclusion

For the foregoing reasons, the trial court's amended judgment is affirmed.

_____
Cristian M. Stevens, J.,

James M. Dowd, P.J. and
Angela T. Quigless, J. concur.

---

[8] Though Appellants plead rescission, they seem to seek the similar equitable remedy of reformation, in that they want to enforce some parts of the Settlement Agreement and not others. "To 'rescind' a contract is not merely to terminate it, but to abrogate and undo it from the beginning; it necessarily involves a repudiation of the contract and the refusal of the moving party to be further bound by it." *Medicine Shoppe Intern., Inc. v. J-Pral Corp.*, 662 S.W.2d 263, 270 (Mo. App. E.D. 1983). "Reformation allows parties to a contract to conform the writing to their intent." *Elton v. Davis*, 123 S.W.3d 205, 212 (Mo. App. W.D. 2003). Reformation is an "extraordinary equitable remedy . . . granted with great caution and only in clear cases of fraud or mistake." *Alea London Lt. v. Bono-Soltysiak Enterprises*, 186 S.W.3d 403, 415 (Mo. App. E.D. 2006). Again, we already have disposed of Appellants' claim of mistake, and Appellants do not allege fraud.